# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRUCE ALLEN SATHER,

Plaintiff,

v.                                                Case No.

HILLSBOROUGH COUNTY AVIATION
AUTHORITY, an independent special district
of the State of Florida,

Defendant.

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BRUCE ALLEN SATHER (hereinafter "Plaintiff" or "Sather"), by

and through his undersigned counsel, hereby sues Defendant, HILLSBOROUGH

COUNTY AVIATION AUTHORITY, an independent special district of the State of

Florida (hereinafter "Defendant" or "HCAA"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for violations of the Florida Public Whistleblower

Act, §112.3187, Florida Statutes ("FPWA"), and the Family and Medical Leave

Act, 29 U.S.C. §2601, et seq. ("FMLA").[1]

2.      Plaintiff seeks monetary damages in excess of $75,000, exclusive of

interest, costs, and attorneys' fees, including back pay, front pay, compensatory

---

[1] Plaintiff intends to amend this Complaint to add claims under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. ("ADEA") and the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA") upon receipt of his Notice of Right to Sue from the Equal Employment Opportunity Commission and after 180 days have passed from Plaintiff's filing his EEOC charges without any determination from the FCHR.

damages, liquidated damages, and other relief available under the FPWA and FMLA. Plaintiff also seeks declaratory and injunctive relief, attorneys' fees and costs, and all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

3.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's FMLA claims arise under federal law. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. §1391(b) and Local Rule 1.02(b)(4) because:

a.  Defendant maintains its principal place of business in Hillsborough County, Florida;

b.  All or a substantial part of the events or omissions giving rise to these claims occurred in Hillsborough County, Florida; and

c.  Defendant operates Tampa International Airport, which is located within this judicial district.

## PARTIES

5.    Plaintiff Bruce Allen Sather is a natural person and citizen of the United States, residing in Hernando County, Florida.

6.    At all times material to this action, Plaintiff was an employee of Defendant within the meaning of the FMLA, 29 U.S.C. §2611(2)(A), having been

employed by Defendant for more than 12 months and having worked more than 1,250 hours during the 12-month period immediately preceding his need for leave.

7.    Plaintiff is also a protected person under the FPWA, §112.3187, Florida Statutes.

8.    Defendant Hillsborough County Aviation Authority is an independent special district established by the Florida Legislature in 1945. Defendant maintains its principal place of business at 4100 George Bean Parkway, Tampa, Florida 34607, where it operates Tampa International Airport.

9.    At all times material to this action, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. §2611(4)(A), as it is a "public agency" and it employed more than 50 employees within a 75-mile radius for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

10.    Defendant is also an "agency" within the meaning of the FPWA, §112.3187(3)(b), Florida Statutes, as it is an independent special district created by law.

## FACTUAL ALLEGATIONS

11.    Plaintiff began his employment with Defendant on March 9, 2000, and served as Senior Manager of Buildings, Equipment, and Grounds until his termination on March 4, 2025.

12.     In his role, Plaintiff managed the Buildings, Grounds, Fleet, and Special Projects divisions, supervising approximately 80 employees, including middle managers, and oversaw Contract and Project Managers responsible for coordinating contracted work and managing Capital projects.

13.     Throughout his 25-year career with Defendant, Plaintiff consistently received positive performance evaluations, including a "High Right on Target" rating for the period of October 2023 through September 2024, and received a merit increase effective January 2025.

14.     In August 2023, Plaintiff began taking intermittent FMLA leave to care for his elderly father, who suffers from serious health conditions. HCAA approved this intermittent FMLA leave.

15.     Plaintiff's supervisors were aware of his need for intermittent leave under the FMLA.

16.     Plaintiff's intermittent FMLA continued through 2024 and 2025.

17.     On September 5, 2024, during a disciplinary meeting between Plaintiff and his subordinate, Robert Villari, Villari became violent, requiring law enforcement intervention to escort him from the premises.

18.     On September 6, 2024, Plaintiff attended a meeting with Shae Gee in Human Resources and Jim Surgine, Director of Maintenance Operations. During this meeting, Plaintiff raised safety concerns about permitting Villari to return to work in light of his violent outburst the day before.

19.    After that meeting, on September 9, 2024, Plaintiff emailed Shae Gee in HR, providing his statement about the Villari incident and quoting the Defendant's Workplace Violence Prevention procedure (S603.03) to Human Resources, seeking to ensure that Defendant followed its Workplace Violence procedure and ensure employee safety.

20.    Following his written email and as part of Defendant's investigation into the Villari incident, on or about September 11, 2024, Plaintiff met with Paul Horst, again voicing concerns for employee safety due to Defendant's gross mismanagement and failures to follow the Workplace Violence procedure with regard to Villari.

21.    Plaintiff's objections and disclosure of suspected gross mismanagement as part of Human Resources' investigation constituted protected activity under the FPWA.

22.    After engaging in this protected conduct, exercising his rights under the FMLA and despite his exemplary performance and proven track record, Defendant began a campaign of retaliation against Plaintiff, including but not limited to:

a.    Requiring Plaintiff to sign a disciplinary Memorandum of Understanding ("MOU") on September 19, 2024, specifically regarding the Villari incident,

b.      Issuing a written counseling to Plaintiff in November 2024 regarding the same Villari incident that he previously received the MOU in September 2024.

23.     Throughout this time, from September 30, 2024, through October 14, 2024, Plaintiff took approved FMLA leave to care for his father.

24.     During his FMLA leave, Defendant both interfered with his FMLA rights and also retaliated against him for taking FMLA. Specifically, the Vice President of Maintenance, Paul Horst, repeatedly contacted Plaintiff about work matters on or about September 30, October 3, and October 9, 2024, including scheduling a mandatory Touch Point Teams meeting for October 9, 2024.

25.     During Plaintiff's FMLA leave from September 30 through October 14, 2024 to care for his elderly father, Defendant gave 7% acting pay increases to two younger employees, Chuck Allen (51) and Shawn Culbreth (42), who assumed Plaintiff's duties.

26.     Despite Plaintiff's return to work and the resumption of all of his duties, Defendant continued payment of the acting pay to Allen and Culbreth for months.  Defendant did this despite HR acknowledging that such acting pay to others was technically inappropriate for intermittent FMLA. This arrangement undermined Plaintiff's position and demonstrated Defendant's retaliatory intent to ultimately push Plaintiff out of the organization.

27.     Although Plaintiff had decades of proven service and strong evaluations as a Senior Manager of Buildings, Equipment, and Grounds at the Defendant, Defendant systematically eliminated and took away Plaintiff's work responsibilities beginning in December of 2024.

28.     Plaintiff was himself hospitalized from February 10-11, 2025 due to his own serious health conditions. This was an FMLA-qualifying leave.  Plaintiff returned to work on February 12, 2025, at full capacity.

29.     Inexplicably, less than a month after his medical leave, on March 4, 2025, Defendant terminated Plaintiff's employment, stating he was "no longer a good fit for Maintenance," despite his exemplary 25-year career and recent positive performance evaluation.

30.     Following his termination, Plaintiff requested alternative positions in lieu of termination.

31.     On March 6, 2025, Defendant denied Plaintiff's request for alternative positions.

32.     Defendant's actions in disciplining and terminating Plaintiff were pretextual and retaliatory.

33.     As a direct result of Defendant's actions, Plaintiff has suffered substantial financial damages, including lost wages, lost bonuses, lost pension contributions, lost health insurance benefits, emotional distress, loss of professional reputation, and other intangible injuries.

34.     The actions alleged above have caused, and continue to cause, irreparable harm to Plaintiff, for which there is no full, complete, or adequate remedy at law.

## COUNT I
## Violation of the FPWA
## §112.3187, Florida Statutes

35.     Plaintiff realleges and incorporates by reference paragraphs 1 through 1-5, 7-8, 10-13, 17-22, 26-34 above as if fully set forth herein.

36.     Plaintiff engaged in protected activity under the FPWA when he reported suspected gross mismanagement and/or misfeasance by Defendant in failing to follow the Workplace Violence Prevention procedure (S603.3) for the protection and safety of the employees and/or participated in Human Resources' investigation regarding the Villari incident.

37.     Defendant, through its agents and employees, was aware of Plaintiff's protected activity.

38.     Following Plaintiff's protected disclosures, Defendant took adverse employment actions against him, including but not limited to:

a.  Requiring him to sign a disciplinary Memorandum of Understanding on September 19, 2024;

b.  Issuing an unjustified written counseling in November 2024 based on the same MOU from September 2024;

c.  Systematically eliminating his work responsibilities;

d.  Terminating his employment on March 4, 2025; and

e.  Denying his request for alternative positions on March 6, 2025.

39.     Plaintiff's protected disclosures were made in good faith and were based on the safety concerns related to and arising from the earlier Vilari incident requiring law enforcement interaction and his suspected belief that Defendant's failure to follow established safety protocols created substantial and specific dangers to employee health and safety.

40.     Defendant took these adverse actions because of Plaintiff's statutorily protected activities.

41.     But for his protected activities, Plaintiff would not have suffered such adverse actions.

42.     Defendant's actions have caused, and continue to cause, irreparable harm to Plaintiff, for which there is no full, complete, or adequate remedy at law.

43.     Plaintiff has suffered irreparable harm by the violation of his statutory rights, entitling him to the remedies provided by Section 112.3187(9), Florida Statutes.

<strong><u>COUNT II</u><br>FMLA Interference<br>29 U.S.C. §2615(a)(1)</strong>

44.     Plaintiff realleges and incorporates by reference paragraphs 1 through 1-6, 9, 11-18, 22-24, 26-34 above as if fully set forth herein.

45.    Plaintiff was an eligible employee under the FMLA and was entitled to FMLA leave to care for his father, who suffers from serious health conditions.

46.    Plaintiff's FMLA was properly documented and approved by Defendant's Human Resources department.

47.    Defendant was a covered employer under the FMLA and was aware of Plaintiff's right to take FMLA leave.

Defendant interfered with Plaintiff's FMLA rights by:

a.    Contacting him multiple times during his protected FMLA leave from September 30, 2024, through October 14, 2024;

b.    Requiring him to participate in work-related meetings while on FMLA leave; and

d.    Using his FMLA leave as a negative factor in employment actions.

48.    Defendant, including Paul Horst, VP of Maintenance, was notified of Plaintiff's FMLA designation and the requirement to avoid work-related contact during protected leave periods, yet deliberately violated these requirements.

49.    As a direct and proximate result of Defendant's interference with his FMLA rights, Plaintiff has suffered damages, including lost wages, benefits, and other compensation.

## COUNT III
### FMLA Retaliation
### 29 U.S.C. §2615(a)(2)

50.    Plaintiff realleges and incorporates by reference paragraphs 1 through 1-6, 9, 11-18, 22-34 above as if fully set forth herein.

51.    Plaintiff engaged in protected activity under the FMLA by:

    a.  Requesting and taking approved FMLA leave beginning in August 2023;

    b.  Taking extended FMLA leave from September 30, 2024, through October 14, 2024; and

    c.  Continuing to use intermittent FMLA leave to care for his father through 2025.

52.     Defendant retaliated against Plaintiff for exercising his FMLA rights by:

    a.  Requiring him to sign a disciplinary Memorandum of Understanding on September 19, 2024;

    b.  Issuing an unjustified written counseling in November 2024 based on the same MOU from September 2024;

    c.  Systematically eliminating his job responsibilities beginning in December 2024;

    d.  Treating him less favorably than employees who did not take FMLA leave;

    e.  Terminating his employment on March 4, 2025; and

    f.  Refusing to consider him for alternative positions.

53.    But for exercising his FMLA rights and taking FMLA leave, Plaintiff would not have suffered such adverse actions.

54.    As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered damages, including lost wages, benefits, and other compensation.

55.    Defendant's violations of the FMLA were willful, entitling Plaintiff to liquidated damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and:

A.    Declare that Defendant's actions violated the FPWA and the FMLA;

B.    Permanently enjoin Defendant from future violations of the FPWA and the FMLA;

C.    Order Defendant to reinstate Plaintiff to his former position with all benefits, seniority rights, and retirement contributions as if his employment had continued without interruption, or in the alternative, award front pay and benefits in lieu of reinstatement;

D.    Award Plaintiff back pay, lost wages, and benefits, including losses to his retirement benefits;

E.    Award Plaintiff liquidated damages under the FMLA in an amount equal to his lost wages and benefits due to Defendant's willful violations;

F.     Award Plaintiff compensatory damages for emotional distress, mental anguish, and damage to his professional reputation for Defendant's violations of the FPWA;

G.     Order Defendant to implement effective policies, procedures, and training to prevent future violations of the FPWA and FMLA;

H.     Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 112.3187(9)(d) of the FPWA and 29 U.S.C. §2617(a)(3) of the FMLA;

I.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

J.     Award Plaintiff a tax consequence "gross-up" to offset increased tax liability from receiving multiple years of back pay in a lump sum; and

K.     Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2025

Respectfully submitted,

*s/ Jo Ann Palchak*
Jo Ann Palchak, Esq.
Florida Bar No. 22826
Mason B. Binkley, Esq.
Florida Bar No. 87922
Yvette D. Everhart, Esq.
Florida Bar No. 36960
SASS LAW FIRM
601 West Dr. Martin Luther King, Jr. Boulevard

Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797
Primary: jpalchak@sasslawfirm.com
Primary: mbinkley@sasslawfirm.com
**Primary**: yeverhart@sasslawfirm.com
**Secondary**: sbartlett@sasslawfirm.com
**Secondary**: reception@sasslawfirm.com
**Secondary**: sgreinke@sasslawfirm.com

Attorneys for Plaintiff